No. 46,519

Dr. Wilber B. Spalding, Jr., *Appellee*, v. Rex Price, Victor Kearns and Robert Davis, County Commissioners; Donald J. Curry, County Clerk; Edna C. Craig, County Treasurer; and William Baker, County Assessor, *Appellants*.

(502 P. 2d 713)

Opinion filed November 4, 1972.

*Lyndus A. Henry,* county counselor, *James Wheeler,* county attorney, and *Bernis G. Terry,* of Olathe, were on the brief for the appellants.

*Kenton C. Granger,* of Granger and Nagels, of Overland Park, was on the brief for the appellee.

*Per Curiam:* The plaintiff-taxpayer filed a statutory action under K. S. A. 79-2005 to recover $8,018.83 in taxes paid under protest for the year 1970. The taxes were paid to the county treasurer of Johnson County on the London Square Apartments. The tax protested came from a levy on additional improvements placed on the real estate during the year 1969. The taxpayer received no notice of an increase in valuation for the improvements until May 15, 1970. K. S. A. 79-1412a, *Third* provides that when the assessed value of any parcel of real estate is changed from the preceding year the county assessor shall notify the taxpayer by mail on or before May 1st.

The trial court entered summary judgment for the plaintiff-taxpayer. The court held the mailing of notice on or before May 1st was a condition precedent to the valid assessment of any tax to be levied on the basis of an increase in valuation.

The notice of the increased valuation was mailed by the assessor on May 13, and it was received by the taxpayer on May 15.

The defendants (county officials), seeking to uphold the assessment and the tax, attack the sufficiency of the written protest and contend the provisions of the notice statute are directory—not mandatory. They point out that the written protest fails to cite any statute making the assessment and levy invalid. The protest con-

tains no allegations of fraud or illegality. The defendants conclude that since the written protest is insufficient under K. S. A. 79-2005 the petition attempting to state a claim thereon must be held insufficient as a matter of law.

The pertinent part of the written protest filed by the taxpayer reads as follows:

"The reason for this protest is that the first valuation statement in 1970, which was mailed March 17, 1970, showed a total value of land and improvements of $374,600, which is admitted to be valid. On May 15, 1970, a subsequent valuation statement was mailed raising the land and improvements value to $665,600, the entire change being reflected in the improvements, which change from $350,000 to $641,000 is protested. See attached Exhibit. This later statement was mailed *after* the May 10th date on which appeals could be made to the County Board of Equalization, thereby foreclosing any opportunity to challenge the increase in valuation. There has been no new construction or added improvements on the property during the year of 1970 which would justify any change in valuation pursuant to K. S. A. 79-417, nor under any other statutory provision."

The protest statute, K. S. A. 79-2005, provides:

"(1) Any taxpayer before protesting the payment of his taxes, shall be required, at the time of paying said taxes, to make and file a written statement with the county treasurer *clearly stating the grounds* on which the whole or any part of said taxes are protested, and shall further *cite any law, statute, or facts* on which such taxpayer relies in protesting the whole or any part of such taxes and mail a copy . . ." (Emphasis added.)

In the present case the written protest merely states the notice of increased valuation was mailed "after the May 10th date on which appeals could be made to the County Board of Equalization."

No statute requiring notice of an increased valuation is mentioned in the protest or in the petition. The taxpayer's conclusion, that May 10th is the final date on which appeals can be made to the county board of equalization, is not supported by reference to any statute. We note that under K. S. A. 79-1602, then in effect, the date of final adjournment for the board is June 15, and after that time the board could not change an assessed valuation placed on property.

The last sentence of the quoted portion of the protest refers to K. S. A. 79-417. This is a statutory provision which enables the county to recover taxes on property which has escaped assessment. The county clerk is authorized to charge taxes, which were overlooked in a prior year, against the real estate by placing the same on the tax roll in any subsequent year. In the last sentence of the

protest filed the taxpayer states that no improvements have been added to the real estate during the year 1970.

This would not be a valid basis for protest of the taxes assessed and levied in 1970. The 1970 taxes are determined by the assessed valuation on January 1, 1970. (K. S. A. 79-309.) The notice of a change in valuation for 1970 tax purposes would reflect improvements placed on the property during the preceding year, 1969.

Certain statutory duties are placed upon the county assessor. Mailing notice of changes in valuation is one of his duties. K. S. A. 79-1412a, *Third* provides:

"County assessors shall perform the following duties:

. . . . . . . . . . . . . . .

*Third.* Notify each taxpayer on or before May first by mail directed to his last known address as to the assessed value placed on each parcel of his real property: *Provided,* That after 1956 such notice shall be sent only when the assessed value of any parcel has been changed from the assessment shown for the preceding year. Failure to receive such notice shall in nowise invalidate the assessment."

The last sentence of this provision is noteworthy. The legislature in directing the assessor to mail notices provided that a failure to receive a notice of change in valuation should "in nowise invalidate the assessment." In interpreting the meaning and effect of this statute it would not be reasonable for this court to hold the assessment is invalid because the notice was received two weeks late, when the legislature has said failure to receive the notice shall in nowise invalidate the assessment. This latter statement appears another way for the legislature to say the provision for mailing notice is directory, not mandatory.

In *City of Hutchinson v. Ryan,* 154 Kan. 751, 121 P. 2d 179, the rule of construction, as to directory or mandatory provisions in statutes, is stated as follows:

"In determining whether statutory provisions are mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system and dispatch of the public business, the provision is directory." (Syl. ¶ 1.)

Under this rule we hold the notice provision, K. S. A. 79-1412a, *Third,* is directory rather than mandatory. See also *Board of Education v. Barrett,* 101 Kan. 568, 167 Pac. 1068; *School District v. Clark County Comm'rs,* 155 Kan. 636, 127 P. 2d 418; and *Shriver v.*

*Board of County Commissioners,* 189 Kan. 548, 370 P. 2d 124. Having concluded the notice statute is directory, a delay of two weeks in mailing the notice of change in valuation would not result in an invalid assessment.

There is a statute which provides a means of enforcing the statutory duties of assessors. In case of willful neglect of duty an assessor may be charged with a misdemeanor and a fine may be imposed upon conviction. (K. S. A. 79-1418.)

The written protest filed in the present case was legally insufficient in the particulars previously discussed. For cases relating to the sufficiency of tax protests see *Millhaubt v. McKee,* 141 Kan. 181, 185, 40 P. 2d 363; *Kansas Gas & Elec. Co. v. Dalton,* 142 Kan. 59, 67, 46 P. 2d 27; and *Henderson v. Montgomery County Comm'rs,* 147 Kan. 64, 67, 75 P. 2d 816.

Since the statutory protest on which this action was based is legally insufficient, the petition filed is fatally defective as a matter of law. Accordingly the judgment of the lower court is reversed and the case is remanded to the district court with directions to enter judgment for the defendants.